IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**ROBERT FRAKER,**

    **Plaintiff,**

vs.

Case No. C2-08-0058
Judge Edmund A. Sargus, Jr.
Magistrate Judge Terence P. Kemp

**MARYSVILLE EXEMPTED**
**VILLAGE SCHOOLS,**

    **Defendant.**


## OPINION AND ORDER

Plaintiff, Robert Fraker, is a former employee for the Marysville Exempted Village Schools. He alleges that he was terminated from his employment in retaliation for giving testimony in a co-worker's race-discrimination case against the School District and that the charges leading to his dismissal were a pretext for retaliation. Plaintiff instituted the instant action against the Marysville Schools, Larry Zimmerman, Janet Shonebarger and Steven Ader (collectively "Defendants"). This matter is now before the Court for consideration of Defendants' Motion for Summary Judgment.[1] For the reasons that follow, Defendants' Motion for Summary Judgment

---

[1] Defendants previously filed a Motion for Judgment on the Pleadings asserting, most significantly, that Plaintiff's claims should be dismissed for failing to attach his Right to Sue letter from the Equal Employment Opportunity Commission authorizing institution of the action under Title VII of the Civil Rights Act of 1964. Plaintiff thereafter attached the Right to Sue letter to his memorandum in opposition to the Motion for Judgment on the Pleadings. Although Defendant is correct that Plaintiff did not follow the proper procedure of seeking leave to amend his Complaint to attach the Right to Sue letter, the Court will permit and consider the attachment as public record and because it relates to the allegations in his Complaint. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)(noting court may take account of documents referred to in a complaint and public records without converting motion to one for summary judgment).

is GRANTED IN PART AND DENIED IN PART. Plaintiff's Motion to Substitute Party Defendant is GRANTED; Plaintiff's Motion for Leave to File an Amended Complaint is DENIED; Plaintiff's Motion to Accept his Response in Opposition to Motion for Summary Judgment is GRANTED; and Defendants' Motion to Strike Plaintiff's Supplemental Affidavit is GRANTED.

I.

Plaintiff, Robert Fraker, began his employment with the Marysville Exempted Village School District Board of Education ("Board") in 2001 as a mechanic. In May, 2004, the Board promoted Plaintiff to head mechanic. (Zimmerman Supp. Aff., ¶¶ 2-3.) At all times relevant to this matter, Defendant Steven Ader was employed as Operations Manager. Defendant Larry Zimmerman was the Superintendent of the School District. Defendant Janet Shonebarger worked as the Transportation Director and was Plaintiff's supervisor.

As she indicated in her deposition, Ms. Shonebarger and Mr. Zimmerman socialize and own real property together. (Shonebarger Dep., at 16-17.) Before she became director of the transportation department in 2001, Ms. Shonebarger served as Mr. Zimmerman's secretary for over twenty years. She left the employ of the school system on October 1, 2007. (Shonebarger Aff., ¶ 1.)

In May of 2006, Robin Hurt, a female African-American substitute bus driver for the School District, filed a charge of discrimination with the Ohio Civil Rights Commission alleging

---

To the extent Defendants raised additional legal issues in their Motion for Judgment on the Pleadings, the Court will address their contentions in the context of their later-filed Motion for Summary Judgment and/or Plaintiffs' various Motions.

that Ms. Shonebarger denied her five promotions because of her race, and called her a "F—ing N—."[2] (Pl's Dep., Exh. G.) Ms. Hurt's charge with the Equal Employment Opportunity Commission ("EEOC") was closed with a negotiated, private settlement. (Def's Reply, Exh. 2, Response to FOIA request.) The record contains no information as to the precise date on which Ms. Hurt settled her case.

In the Spring of 2007, before Ms. Hurt settled her claim, Plaintiff received a notice from the EEOC requiring that he appear to provide sworn testimony regarding her case. (Pl's Dep., at 49-51.) Plaintiff maintains that he had overheard Ms. Shonebarger refer to Ms. Hurt as a "F___ N___" when Ms. Hurt was late for her bus route. Plaintiff testified at his deposition that he spoke to Neal Handler, Assistant Superintendent, prior to his meeting with the EEOC about providing information in Ms. Hurt's case. According to Plaintiff, he informed Mr. Handler that he did not want to lose his job because of his involvement in Ms. Hurt's case. Mr. Handler told Plaintiff to tell the truth, and everything should be fine. (Pl's Dep., at 51-52.) Separately, Mr. Ader, the Operations Manager, averred that at some point prior to the end of Ms. Hurt's EEOC investigation, of which he was aware, Plaintiff approached him and asked if he was required to provide testimony to the EEOC.[3] According to Ader, Plaintiff indicated that he would prefer that

---

[2] Ms. Shonebarger denies that she referred to Ms. Hurt in this manner.

[3] Mr. Ader's affidavit, dated August 2, 2007, appears within a bulk attachment, Exhibit AA to Plaintiff's deposition. (Doc. 35-2, at pp. 90-91.) Defendants attached another affidavit, executed by Mr. Ader on March 19, 2009 to their Motion for Summary Judgment as Exhibit 1.

In Paragraph 9 of his later-filed affidavit of March, 2009, Ader avers that "[p]rior to August 13, 2007, [the date of Plaintiff's disciplinary hearing before the Board of Education]," he "did not know . . . Robert Fraker had met with [the] EEOC on May 3, 2007 . . . ." The Court views this statement as inconsistent, at best, with Ader's previous testimony set forth above from his August 2, 2007 affidavit. Ader may not have known the time frame of Plaintiff's involvement in Ms. Hurt's discrimination case,

the District direct him not to provide the requested testimony. (Ader Aff., 8/2/07, ¶ 10.) Ader responded that the decision to comply with the EEOC's investigation was his responsibility and that the District would not direct him in any manner. (*Id.*)

On May 3, 2007, Plaintiff met with EEOC investigators and executed an affidavit in Ms. Hurt's case averring that he had heard Ms. Shonebarger make the derogatory remark regarding Ms. Hurt's race in early 2006. (Pl's Dep. pp. 49-51, Exh. I.)

Mr. Ader testified by affidavit that Ms. Hurt approached him on or about May 22, 2007 and complained that Plaintiff, and another employee, Jerry Martino, were displaying inappropriate material on the computer located in the bus mechanics' office.[4] The next day, on May 23, 2007, Mr. Ader conducted an employment evaluation of Mr. Andy James, a bus mechanic who worked with Plaintiff. Without mentioning Ms. Hurt, Ader asked James whether he had seen Plaintiff and Mr. Martino looking at pornographic or other inappropriate material on the school's computer.[5] Mr. James testified that he had seen Plaintiff and Martino display inappropriate material on the school computer, including pornography. (*In re: The Robert Fraker Investigation*, Aug. 13, 2007

---

but clearly, Ader was aware that the Plaintiff had participated in her case. Ader's March 14, 2009 affidavit appears to be crafted to suggest otherwise.

[4] There is no testimony or sworn statement from Ms. Hurt in the record of this case. The record is also devoid of evidence relating to whether Mr. Martino was disciplined or otherwise treated similarly to Plaintiff.

[5] Mr. Ader's account in his affidavit of Mr. James' statements regarding Plaintiff during the employment evaluation is inadmissible hearsay and inappropriate under Federal Rule of Civil Procedure 56(e)(1), which requires that affidavits in support of summary judgment must be made on personal knowledge "set[ting] out facts that would be admissible in evidence." Moreover, Ader's characterization of James' statements in the affidavit are in the form of legal conclusions (*i.e.*, that Plaintiff "appropriated and charged the school" the cost of new tires for his personal vehicle and that Plaintiff was "stealing" parts from work). These characterizations vary from the factual statements James made of his observations of Plaintiff during the Disciplinary Hearing.

-4-

("Disciplinary Proceedings"), James at pp. 82-83.) Mr. James also testified that he observed Plaintiff frequently fueling his truck or his son's truck at the School District's pump (*Id.* at 86-87); that he intercepted a voicemail message from a Bob Sumerel Tire representative to Plaintiff indicating that tires for Plaintiff's vehicle would be ready in two weeks, and that he had no problem using the School District's purchase order (for a discount)[6] (*Id.* at 90-91); that he used inappropriate sexual language with women and grabbed their personal areas (*Id.* at 92-93); and that, the year before, Plaintiff's son had taken scrap metal from school property and sold it. (*Id.* at 99.)[7] Mr. Ader reported these allegations to Defendant Zimmerman and Assistant Superintendent Neal Handler. (Ader Aff., ¶ 8.)[8]

On May 28, 2007, Mr. Zimmerman placed Plaintiff on administrative leave, followed by an unpaid administrative suspension beginning on June 25, 2007. (Pl's Dep., Exh. H.) On August 13, 2007, the Board adopted a resolution terminating Plaintiff's employment. (Pl's Dep.,

---

[6] A detective from the Marysville Division of Police investigated the allegations regarding misappropriation of the tires, and found that Plaintiff paid for the items with his personal credit card and that he did not pay tax on the tires. The detective confirmed, however, that the tire company maintained that it was their accounting error in failing to collect the tax. (Disciplinary Proceedings, at pp. 26-27.)

[7] Plaintiff denies each and every allegation of wrongdoing and provides evidence to refute or explain these instances of purported misconduct.

[8] After Plaintiff was placed on administrative leave, the Director of Technology, James Moots, performed an audit of Plaintiff's internet usage and his email account. He discovered over 200 messages from an on-line dating service, e-Harmony.com, in Plaintiff's email inbox from the period of June5, 2007 through June 25, 2007, again, while Plaintiff was on administrative leave. (Disciplinary Hearing, Ader, at p. 51.) There were several non-work related internet sites stored in Plaintiff's internet historical database, the vast majority of which include searches of e-Harmony.com and sales listings for semi-trucks. The history also included such sites as uglypeople.com, Youtube, adultfriendfinder.com, and some pornographic images. (Disciplinary Hearing, Moots, at pp. 70-72.) Plaintiff contends that other people in his office had access to his password, and that someone else accessed most of the non-work related sites. He admits that he accessed e-Harmony.com during his lunch time or before he began work. (Pl's Dep., pp. 84-85, Exh. X.)

Exh. T.) The Board asserted that this determination was based on the following: (1) Plaintiff's use of web sites unrelated to school business such as an online dating service and sexually-explicit sites; (2) repeated displays of sexually-explicit images on a computer; (3) receipt of over 200 emails from an online dating service; (4) having inappropriately touched at least one female employee, making repeated sexual jokes and flirtations toward female employees, use of graphic verbal commentary relating to employees' bodies, and use of sexually derogatory terms in reference to females; (5) having allowed his son to sell Defendant Schools' scrap metal at a recycling yard and failing to deposit the proceeds with the Treasurer; and (6) use of his position to gain a discount in the purchase of tires for personal use. (*Id.*)

Plaintiff instituted this action alleging his termination arose in retaliation for his having testified before the Equal Employment Opportunity Commission in a race discrimination claim brought by a co-worker. The matter is now ripe for resolution.

## II.

### A. Motion to Substitute Party Defendant and Motion for Leave to File Amended Complaint

In his original Complaint, Plaintiff sued Marysville Exempted Village Schools. In their Answer, Defendants notified Plaintiff that he had misnamed this Defendant, and that the only legal entity capable of suing or being sued was actually Marysville Exempted Village School District Board of Education. Several months after the deadline to amend the pleadings, Plaintiff filed a Motion to Substitute Party Defendant to correct the misnomer. Defendants objected on the basis that Federal Rule of Civil Procedure 25, which controls substitution of parties in instances of death, incompetency, transfer of interest or separation from office by a public official, was not

appropriate. Defendants contended that Plaintiff instead should have sought leave to amend his Complaint.

In response, Plaintiff did file a Motion for Leave to File an Amended Complaint. In addition to properly naming the Board of Education as a Defendant in the proffered Amended Complaint, however, Plaintiff sought to sue each of the five members of the School Board in his official capacity. Defendants objected to Plaintiff's attempt to name new parties at such a late stage of the proceedings.

The Court concludes that Defendants will suffer no prejudice if Plaintiff is permitted to properly rename the Defendant School Board. The Court, therefore, will treat Plaintiff's Motion to Substitute Party Defendant as a Motion to Amend his Complaint under Rule 15, as opposed to a substitution under Rule 25. A party may amend the pleading once as a matter of course before a responsive pleading. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court agrees with Defendants that Plaintiff acted less than diligently in seeking to cure the deficiency of his pleading by waiting several months after the deadline to amend. Although the primary focus of the inquiry is upon the moving party's diligence, the presence or absence of prejudice to the other party or parties is a factor to be considered. *Inge v. Rock Financial Corp.*, 281 F.3d 613 (6th Cir.2002). Here, the School Board has never doubted that Plaintiff's causes of action were brought against it. The Board has fully defended this case as if it had been properly named. Defendants have not provided any indication

that they would be prejudiced if Plaintiff is permitted to name the proper entity.[9]

The Court, however, will not permit Plaintiff to amend his Complaint to add five new defendants, those being the members of the School Board. Plaintiff failed to demonstrate any diligence whatsoever in naming these individuals during an earlier stage of the litigation, although he has had full knowledge of their identities from the outset. Moreover, Plaintiff waited until after Defendants filed their Motion for Summary Judgment to seek leave to name the Board members in this lawsuit. These individuals would be severely prejudiced if they were added at this late juncture, having been deprived of their right to conduct discovery and file dispositive motions. The Court cannot countenance this unwarranted delay and significant prejudice to the opposing parties. *See, e.g., Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)(noting that denial of amendment may be appropriate where, for example, there is undue delay, dilatory motive on the part of the movant, or prejudice to the opposing party). Accordingly, Plaintiff's Motion to Substitute Party, which the Court construes as a Motion to Amend to rename the School Board is **GRANTED**, but his later-filed Motion to Amend the Complaint is **DENIED**.

## B.  Motion to Accept his Response in Opposition to Motion for Summary Judgment

Plaintiff's counsel moves to accept his memorandum in opposition to Defendants' Motion for Summary Judgment out of rule. He cites computer difficulties in his effort to file the document electronically. Without objection or demonstration of prejudice from Defendants, the Motion is **GRANTED**.

---

[9] Defendants' Motion for Summary Judgment on the grounds that the School District is not a legal entity capable of being sued is accordingly denied as moot.

## C. Defendants' Motion to Strike

On July 14, 2009, Plaintiff filed a document he captioned as a "Supplemental Affidavit." Plaintiff filed this document, which contains a statement of Ms. Paula Nicol, addressed "To Whom It May Concern," seven weeks after the parties completed briefing on Defendants' Motion for Summary Judgment.[10] This document, however, does not constitute an affidavit. The document contains a statement of facts and is notarized. Nevertheless, it does not purport to be made under oath, or contain any other elements of an affidavit or declaration under penalty of perjury. Nor did Plaintiff move for relief under Federal Rule of Civil Procedure 56(f), which permits a non-moving party to seek a continuance fro the court for the filing of a memorandum in opposition to a motion for summary judgment to obtain necessary affidavits. Plaintiff also did not oppose Defendants' Motion to Strike.

Without opposition from Plaintiff and for the reasons set forth above, Defendants' Motion to Strike is **GRANTED**. The document is ordered **STRICKEN** as untimely and improper evidence under Federal Rule of Civil Procedure 56.

## III.

The procedure for considering a motion for summary judgment is set forth in Federal Rule of Civil Procedure 56(c). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the Court views all facts and any inferences

---

[10] The statement is dated May 29, 2009, although Plaintiff did not file it with the Court until some 45 days later.

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is proper if no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 617 (6th Cir. 2001).

> At the summary judgment stage, the moving party bears the initial burden of identifying those parts of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. When the moving party has carried forward this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *Id.*; *accord* Fed. R. Civ. P. 56(e)(2).

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009). A scintilla of evidence in support of the plaintiff's position will be insufficient; rather, evidence must exist on which the jury can reasonably find in favor of the plaintiff. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). The Court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000).

## IV.

### A. Defendants Zimmerman, Ader and Shonebarger - Individual Capacity Claims

Defendants' Motion is **GRANTED** with respect to Plaintiffs' claims against Defendants Zimmerman, Ader and Shonebarger in their individual capacities. Initially, Plaintiff does not name these Defendants in their individual capacities in his Complaint. Moreover, Title VII, 42

U.S.C. § 2000e, *et seq.*, does not authorize an action for money damages against a person in his or her individual capacity. *Wathen v. General Elec. Co.*, 115 F.3d 400, 404-06 (6th Cir. 1997)(holding that individuals who are sued in their individual capacities are not "employers" as that term is defined under Title VII and cannot be held liable under the statute); *Akers v. Alvery*, 338 F.3d 491 (6th Cir. 2003)(same).

To the extent that Plaintiff seeks to assert a claim under 42 U.S.C. § 1983, an endeavor which is altogether unclear based on the Complaint and subsequent briefing, it is premised upon liability under Title VII. For all practical purposes, and as far as the Court can glean from the Complaint, the two claims are the same.[11] Because Title VII claims cannot be asserted against public officials in their individual capacities, any Section 1983 claim against the individual Defendants in their individual capacities based on a Title VII violation also fails. *Akers*, 338 F.3d at 500. Defendants' Motion for Summary Judgment is this regard is, therefore, **GRANTED**.

## B. Title VII Retaliation Claim Against School Board and Public Officials[12]

In order to prove a *prima facie* case of retaliation under Title VII, a plaintiff must prove four elements: (1) the plaintiff engaged in activity protected by Title VII; (2) the defendant knew

---

[11] Plaintiff indicates that this Court's jurisdiction is founded on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1367 (supplemental jurisdiction, although no state law claims appear to be asserted) and "the denial and/abuse of civil right, [p]unitive action against an Employee for testifying against the Employer . . . ." (Compl., pp. 1-2.) Plaintiff fails to make another even tangential reference to a civil rights action under Section 1983 in his Complaint or any other brief or document in the file.

[12] Suing a government officer in her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n. 55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* (citations omitted).

about this fact; (3) the defendant took adverse action against the plaintiff; and (4) the protected activity and the adverse action were causally connected. *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008)(quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)); *Russell v. Univ. of Toledo*, 537 F.3d 596, 609 (6th Cir. 2008). A plaintiff "easily" makes out a *prima facie* case of retaliation. *McClain v. NorthWest Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 335 (6th Cir. 2006)(citation omitted). Once a plaintiff has made out a *prima facie* case of retaliation, the burden of production shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). If the employer satisfies this obligation, the burden of production shifts back to the plaintiff to show "that the proffered reason was not the true reason for the employment decision." *Id.* (quoting *Burdine F*, 450 U.S. at 256). The burden of persuasion, however, always remains on the plaintiff. *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000).

The plaintiffs must offer some evidence of a causal connection between the complaints and the adverse action, which sometimes may consist of temporal proximity. As the Court of Appeals for the Sixth Circuit explained recently:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *See [Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir.2001) ] ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.).

> The reason for this distinction is simple: if an employer immediately retaliates against an employee upon learning of his protected activity, the employee would

>be unable to couple temporal proximity with any such other evidence of retaliation because the two actions happened consecutively, and little other than the protected activity could motivate the retaliation. Thus, employers who retaliate swiftly and immediately upon learning of protected activity would ironically have a stronger defense than those who delay in taking adverse retaliatory action. Moreover, such a holding would accord with cases from other circuits, which recognize that, in rare cases, temporal proximity alone may suffice to show a causal connection.

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

Defendants concede that Plaintiff engaged in protected activity under Title VII by providing testimony to the EEOC in Ms. Hurt's case on May 3, 2007, and that he suffered an adverse employment action when he was terminated as Head Mechanic. Defendants maintain, however, that Plaintiff has adduced no evidence that the Board of Education knew he engaged in protected activity on May 3, 2007 or that a causal relationship exists between the protected activity and his termination.

Plaintiff has produced evidence sufficient to create a genuine issue of material fact as to whether the School Board's agents, including Messrs. Zimmerman, Ader and Handler, knew of Plaintiff's protected activity when he was subjected to an adverse employment action. Ader and Handler participated in the investigation of Plaintiff's alleged wrongdoing. Both Ader and Handler knew that Plaintiff was involved in Ms. Hurt's case. Although the Board of Education ultimately executed the resolution to terminate Plaintiff's employment, Ader and Handler participated with Superintendent Zimmerman in the decision to place Plaintiff on administrative leave, to suspend him without pay and ultimately to recommend to the Board of Education that Plaintiff be terminated. As the Court of Appeals for the Sixth Circuit emphasized in *Mulhall v. Ashcroft*, the *decisionmaker's* knowledge of the protected activity is an essential element of the *prima facie* case of unlawful retaliation. 287 F.3d 543, 551 (6th Cir. 2002)(emphasis added). It

-13-

is no answer in this case to assert as a shield the fact that the Board of Education ultimately terminated Plaintiff's employment.[13] The Board of Education entered into executive session to determine whether Plaintiff's employment contract should be terminated as recommended by Defendant Zimmerman. Under Ohio law, the Superintendent must make recommendations regarding employment actions with respect to non-teaching personnel. The motive or intent of Superintendent Zimmerman in recommending Plaintiff's termination, therefore, is properly at issue in this case, as Zimmerman was integrally involved in the decision making with respect to discrimination claims against the District.

Moreover, the Court concludes that adverse employment actions occurred very close in time after the decisionmakers learned of Plaintiff's protected activity. This temporal proximity between the events is significant enough to create a genuine issue of material fact as to whether a causal connection exists for purposes of this element of Plaintiff's *prima facie* case. Mr. Zimmerman relieved Plaintiff of his duties and placed him administrative leave only three weeks after he provided his affidavit in Ms. Hurt's case and only six days after she purportedly complained to Ader about Plaintiff's malfeasance with the School's computers. The administrative leave and unpaid suspension also constitute adverse employment actions. The fact

---

[13] Given the plain record in this case, the Court is troubled by Defendants' insinuation that Defendants Zimmerman and Ader, who have been sued in their official capacities and thus against the Board for whom they are agents, are entitled to judgment because the were not involved in the termination decision. Equally disconcerting, as set forth below, is Defendants' continued reliance on the position that (1) Defendants did not know prior to the Disciplinary Hearing that Plaintiff was involved in Ms. Hurt's discrimination case "on May 7, 2007," despite the fact that the record is replete with evidence to the contrary, except for confirmation of the specific date; and (2) no temporal proximity exists between Plaintiff's Title VII protected activity and his termination because more than 3 ½ months transpired between Plaintiff providing an affidavit and the Board's resolution terminating him, notwithstanding the clear fact that Plaintiff gave an affidavit to the EEOC on May 3, 2007 and was suspended May 28, 2007.

-14-

that three and one-half months passed between the time Plaintiff provided testimony in Ms. Hurt's case and the Board adopted the resolution terminating him is of diminished consequence given that Plaintiff's protected activity and the suspension and investigation occurred so close in time.

Because Plaintiff has adduced some evidence to create a genuine issue of material fact as to whether the decisionmakers in this case had knowledge of his protected activity and whether a causal connection exists between this protected activity and the adverse employment actions he suffered, Defendants' Motion for Summary Judgment on Plaintiff's Title VII retaliation claim is **DENIED**.[14]

## V.

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 37) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Motion to Substitute Party Defendant (Doc. 38) is **GRANTED**; Motion for Leave to File an Amended Complaint (Doc. 48) is **DENIED**; Plaintiff's Motion to Accept his Response in Opposition to Motion for Summary Judgment (Doc 47) is **GRANTED**; and Defendants' Motion to Strike Plaintiff's Supplemental Affidavit (Doc. 52) is **GRANTED**.

---

[14] Defendants limited the grounds for summary judgment on Plaintiff's Title VII retaliation claim to their assertion that he could not establish a *prima facie* case. Accordingly, the Court does not proceed with any further examination under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) for workplace discrimination claims, including whether Defendants articulated legitimate non-discriminatory reasons for the adverse employment actions and whether those reasons were a pretext for discrimination.

**IT IS SO ORDERED.**

3-8-2010
DATED

/s/ Edmund A. Sargus, Jr.
EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE